**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CLARITY SERVICES, INC.**

      **PLAINTIFF,**

**vs.**                     **CASE NO.:  8:08-cv-02278-SDM-TBM**

**DEAN BARNEY,**

      **DEFENDANT.**

_____/

**MOTION FOR SUMMARY JUDGMENT AND**
**INCORPORATED MEMORANDUM OF LAW**

Comes now, Defendant Dean Barney, by and through his undersigned counsel, and moves for final summary judgment in his favor and against Plaintiff Clarity Services, Inc.

As set forth in more detail below, summary judgment should be entered for Dean Barney because (1) Clarity cannot prove Barney accessed a protected computer without authorization, that he obtained any information from the access, or that Clarity suffered $5000 in loss due to the access; (2) Clarity cannot prove Barney owed Clarity a fiduciary duty of loyalty, breached that duty of loyalty, or that Clarity suffered any damages as a result; (3) Clarity cannot prove that it was deprived of any property as required to show conversion; and (4) Clarity cannot prove that Barney ever fraudulently misstated his employment status, that it relied on any misrepresentation, or that any damages occurred as a result.  For these reasons, Clarity cannot meet its burden of proving each element of its claims and summary judgment should be entered for Barney on all counts.

# I.

## STATEMENT OF UNCONTESTED MATERIAL FACTS

### A.    Background on Clarity

Defendant Dean Barney is a former employee of Clarity.  [Complaint ¶ 3].[1]  At all times relevant to this litigation, Timothy Ranney was functionally in charge of Clarity and supervised Barney.  [Ranney: 37; Ketelsen:[2] 45, 54, 91].[3]  A number of the employees of Clarity previously worked for CL Verify.  [Ranney: 45].

During Barney's employment with Clarity, Clarity did not do any business with any customers of CL Verify and did not intend to do any business with any customers of CL Verify.  [Ranney: 85].  At all times relevant to this litigation, Clarity was not a competitor to CL Verify.  [Ketelsen: 9-10].  As of October 4, 2008, when Dean Barney left Clarity, Clarity had no customers and no product. [Ketelsen:  43-44; Barney 148].  In fact, Clarity did not have its first sale until late March or early April of 2009.  [Ketelsen: 44].

### B.    Barney's Employment With Clarity Begins

Ranney first approached Barney about a job with Clarity.  [Ranney: 30; Barney 33].  Barney began his employment with Clarity on or about May 15, 2008.  [Barney:  37, 144].  Barney worked remotely from his home in Utah, participated in some face to face meetings at

---

[1] Any statements contained in the Complaint constitute statements that Barney may rely upon in his statement of undisputed material facts.  See FED.R.CIV.P. 56 (c).  "[I]f the pleading is unverified, its primary purpose is to show the nature of the cause of action, . . . and the opposing party can take advantage of any admissions in it."  *Ratner v. Young*, 465 F.Supp 386, 389 (D.V.I. 1979); *see also Den Norske Bank AS v. First Nat'l Bank, N.A.*, 838 F. Supp. 19, 21 (D. Mass. 1993) *vacated in part*, 75 F.3d 49 (1st 1996)(same); *McKinley v. Afram Lines (USA) Co.*, 834 F. Supp. 510, 512 (D. Mass. 1993)(same); Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 2722; FED.R.CIV.P. 56 (c).
[2] Brian Ketelsen was the designated corporate representative of Clarity.  [Ketelsen: 5].
[3] Subsequently, an injunction was entered against Ranney by the Sixth Judicial Circuit in and for Pinellas County in *DP Bureau, LLC., v. Timothy Richard Ranney*, Case No. 08-11995-CI-20 (April 22, 2009).

Clarity's offices and was otherwise available by phone and by email.  [Ranney: 31].  At the beginning of Barney's employment with Clarity, there was no work for him to do, and there was no analytics work to be done at any point. [Barney: 117-118; Ranney: 87].

Barney did not have a trade secret agreement or employment contract with Clarity. [Ranney: 81; Barney: 115, 121, 181].

**C.** **Clarity Was Aware That Barney Continued To Provide Services To CL Verify**

When Barney was hired by Clarity, he informed Ranney that he was going to continue to provide services to CL Verify.  [Ranney: 42-43].  During Barney's employment, Ranney was advised that Barney traveled to Tampa to interview potential employees for CL Verify. [Ranney: 44-45].  Other employees of Clarity advised Ranney that Barney was still providing services to CL Verify after he began working for Clarity.  [Ranney: 47; Barney 59-60].  Barney informed Ranney of all CL Verify travel and the reasons for the travel, including the trip to Georgia for a CL Verify sales meeting in September 2008. [Barney: 124, 156, 186].  Barney had three meetings with CL Verify while employed at Clarity and informed Ranney of each meeting. [Barney: 156, 186].  During Barney's employment with Clarity, Ranney spoke with Barney about his continuing to work for CL Verify.  [Ranney: 49].  Barney informed Ranney that he was going to continue to provide services to CL Verify.  [Ranney:  49].  Although Ranney was "very troubled" by the fact that Barney continued to provide services to CL Verify, Clarity still continued to employ Barney.  [Ranney: 49].

Barney performed very little work for CL Verify during the time he was employed by Clarity. [Barney: 57, 134, 138].   Clarity was his priority. [Barney: 58].   Barney had no expectation that he would continue to be paid by CL Verify during this process and he expected his salary to end every pay period. [Barney: 51, 56, 58, 110, 116, 174].

Barney always intended for his employment with CL Verify to end and to perform work solely for Clarity. [Barney: 129].  It was common throughout Barney's career for employment dates to overlap for some time. [Barney: 129].

In the course of aiding CL Verify in its search, Barney made three recommendations for someone to take his old position. [Barney: 139-140].  CL Verify made offers to these three people, but did not hire any of them. [Barney: 139-140].

**D.**     **Barney Provides Notice Of His Resignation To Clarity But Continued To Provide Services To Clarity**

Barney provided his notice of resignation from Clarity to Ranney on or about September 30, 2008. [Ranney: 49-52; Barney 144].  There was no explicit date of resignation. [Ranney: 72-73].  Barney did not believe his resignation was immediate and he believed he still worked for Clarity after his notice of resignation. [Barney 33].  Barney was not instructed that he was to discontinue the work that he had been doing for Clarity.  [Ranney: 71].  Ranney does not recall telling Barney that his resignation was considered effective immediately.  [Ranney: 73].  Ranney admitted that Barney offered to continue to analyze data for Clarity after he gave notice to Clarity.  [Ranney: 70].  After Barney gave notice at Clarity, he was not specifically instructed to stop providing services to Clarity.  [Ranney: 52].  After Barney gave notice at Clarity, there was not any revocation of his authorization to access the Clarity email system or server. [Ranney:70-71; Ketelsen:  29].

On behalf of Clarity, Barney spoke with Jakob Petri, an employee of Certegy. [Barney: 24].  Petri emailed Barney a data file to be analyzed. [Ketelsen: 33].  The underlying data that was used in preparing that data file did not belong to Clarity [Ketelsen: 83-84; Ranney 54].

**E.**   **Barney Returns The Computer He Used When He Worked For Clarity**

Barney packed up the computer and all software and was ready to ship it back on October 5, 2008 and sent it out shortly thereafter. [Ranney: 88-89].   Clarity received the equipment on October 16, 2008. [Ranney: 89].

All of Barney's work was saved to the Clarity server, so there was no information on the computer to delete. [Barney: 161-162].   Although no confidential or proprietary business information was kept on the computer, just to be certain, prior to shipping his computer back to Clarity, Barney reset the computer to protect any sensitive information that might have been unintentionally stored on it. [Barney: 160-161].   This was consistent with Clarity's policy to protect consumer data at all costs. [Ketelsen: 68].[4]

When Clarity received the computer, Brian Ketelsen and Ranney noticed that it had been restored to factory settings.  [Ketelsen: 59; Ranney: 90].  Ketelsen took pictures of the screen, turned the computer off, and removed the disk drives from the computer. [Ranney: 91; Ketelsen: 59-61].

Clarity sent the hard drives to DTI Data for analysis on November 13, 2008. [Ketelsen: 61; Jamieson: 56, 60].   DTI Data was first asked to recover any data from the hard drives. [Jamieson: 52].   DTI Data could not retrieve any data from the hard drives, so it sent them back at no charge. [Jamieson: 52, 58].   The drives were again sent to DTI Data for analysis on August 18, 2009.  [Jamieson: 64].   Clarity's computer expert testified that one of the drives appeared to have never been used. [Jamieson: 66].   The expert also determined that the other hard drive had

---

[4] Ranney agreed that a corporation could be held liable if they did not take appropriate steps to protect consumer credit data and the data was then used to commit a crime.   [Ranney: 96]. Ranney is also aware of situations where laptop computers with consumer credit data have gone missing and there have been consequences associated with the failure to properly secure the data. [Ranney: 97-98].

been restored on October 27, 2008 from 5:28 a.m. to 7:20 a.m., but could not determine when the drive had been wiped. [Jamieson: 41, 47, 49].[5]  DTI Data charged Clarity $900.00 to perform these services. [Jamieson: 84].  If this litigation had not occurred, there would have been no need to do this analysis. [Ketelsen: 97].

Clarity used its own employees to reconstruct the laptop operating environment. [Ketelsen: 97].  This involved purchasing and installing a new hard drive, reinstalling SAS and Agnos Knowledge Studio software, and rebuilding and reconfiguring the environment. [Ketelsen: 97-98].  This took 32 hours:

| | | |
|---|---|---|
| Brian Ketelsen | 12-15 hours | Hourly rate = $54.30 |
| Kevin Teal | 5-8 hours | Hourly rate = $64.90 |
| Cheryl Redding | 9-15 hours | Hourly rate = $60.00 |

[Ketelsen: 99-102, 108-109].

The laptop is still functioning. [Ketelsen: 65, 130].  Clarity has no knowledge of any information that was on the hard drives or removed from them. [Ketelsen: 66, 81].  Clarity has no knowledge of any work that was not saved to the server or that any data had ever been on the laptop. [Ketelsen: 68, 76].

**F.**     **Barney Did Not Use Any Information To The Detriment Of Clarity**

Barney did not share any Clarity information with CL Verify, nor did he share any Certegy information with CL Verify. [Barney: 129, 131-133, 181-182].  In fact, Clarity did not have any trade secret or proprietary information. [Barney: 130].

Clarity has no knowledge of what services Barney provided at CL Verify. [Ketelsen: 124].  Clarity cannot point to any instances where Barney ever failed to work, provide services, or attend meetings because of his work with CL Verify. [Ketelsen:  55, 96, 127].

---

[5] This was long after Barney shipped the computer back to Clarity on in early October. [Ranney: 88-89].

Clarity has no proof that Barney worked at Clarity to gain information for CL Verify. [Ketelsen: 118-119].   Neither Clarity nor Ranney has any knowledge that any Clarity information was shared with CL Verify. [Ranney: 78-79; Ketelsen: 48].   Clarity has no knowledge or proof of any confidential business information or trade secrets Barney has used for his own or CL Verify's purposes. [Ketelsen: 47-48, 52].

Clarity is seeking "his entire salary for the time period," the "data recovery costs from [its] computer expert," and the cost of the Clarity employees "reconstructing his laptop operating environment." [Ketelsen: 95].

## II.

## ARGUMENT

### A.    Standard For Summary Judgment

Under Rule 56 summary judgment should be entered

> if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

FED.R.CIV.P. 56(c).

Rule 56(c) is mandatory and a court must enter summary judgment if the party opposing the motion "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The non-moving party cannot survive summary judgment merely by showing that a factual dispute exists.  Instead, it must come forward with specific evidence showing the existence of a dispute over a material fact, as determined by the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Because the plaintiff bears the burden of establishing every element of a cause of action, to survive summary

judgment, a plaintiff opposing summary judgment must establish that there is a genuine issue **as to each element of his case**. *See Harris v. H & W Contr. Co.*, 102 F.3d 516, 523 (11th Cir. 1996)(emphasis added).

Summary judgment in employment cases is <u>not</u> "a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990) (citing *Celotex*, 477 U.S. at 327). In employment cases in particular, the Eleventh Circuit, *en banc*, has held that "[s]ummary judgments for defendants are not rare." *Chapman v. AI Transp.*, 229 F.3d 1012, 1025 (11th Cir. 2000) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S. Ct. 2097, 2109 (2000); other citations omitted).

A plaintiff cannot prevent summary judgment being entered by merely resting on the conclusory allegations of pleadings, or on the basis of conjecture, suspicion, or surmise. *See Anderson*, 477 U.S. at 248-49. Furthermore, conclusory, self-serving, or uncorroborated allegations in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a summary judgment motion. *See Earley,* 907 F.2d at 1081. Rather, "'[t]here must be a conflict in substantial evidence to create a jury question.'" *Walker v. NationsBank N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995) (*quoting Verbraeken v. Westinghouse Electric Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989)).

**B.      Clarity Cannot Prevail on Count I – Computer Fraud and Abuse Act (CFAA)**

*1.      Background on CFAA*

Clarity cannot establish a claim under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030, because it cannot show any of the required elements. Specifically, it cannot show

that Barney acted without authorization or exceeded his authorization, that he obtained any information from a computer, or that he caused a loss of at least $5000 to Clarity.

The CFAA is primarily a criminal statute addressing computer-related crimes.  The CFAA, in part, makes it illegal to intentionally access a computer without authorization or exceeding authorization and thereby obtain information from any protected computer. §1030(a)(2).  The civil action portion of the statute provides:

> [a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i).

18 U.S.C. §1030(g). The factors the civil action provision refers to are: (1) "loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;" (2) "the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;" (3) "physical injury to any person;" (4) "a threat to public health or safety;" (5) "damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security." 18 U.S.C. §1030(c)(4)(A)(i)

In this case, it is the first factor – loss of $5000 – that Plaintiff is relying on. [Complaint ¶26].  Therefore, in order to prove a claim under the CFAA, Clarity must prove Barney (1) intentionally accessed a computer[6], (2) without or exceeding authorization, (3) obtained

---

[6] For summary judgment purposes, Barney assumes that Clarity's email account, servers, and laptops are protected computers as defined by the CFAA.

information from that computer, and (4) caused a loss of $5000 to Clarity.  Clarity cannot meet

this burden, and Defendant is entitled to summary judgment on Count 1.

Clarity has two basic theories for recovery under the CFAA.  First, that Barney accessed

his Clarity email account without authorization and retrieved information.  Second, that Barney

restored his company laptop to factory setting prior to returning it and may have retained

information that was on that computer.

2.    _Clarity Cannot Show that Barney Acted Without Authorization_

Clarity cannot show that Barney acted without authorization when he used the computers

at issue.  The phrase "without authorization" is not defined by the CFAA. The issue of its

meaning frequently arises where employees initially have access but subsequently use it to

benefit himself or a competitor.   The courts are split on whether such a situation satisfies the

"without authorization" requirement of the CFAA.  A district court in Georgia summed up the

split well:

> On the one hand, several courts, applying the principle that "[t]he authority of an
> agent terminates if, without knowledge of the principal, he acquires adverse
> interest or if he is otherwise guilty of a serious breach of loyalty to the principal,"
> Restatement (Second) of Agency § 112 (1958), have found a CFAA violation in
> such a circumstance. *See Int'l Airport Centers, L.L.C. v. Citrin*, 440 F.3d 418,
> 420-21 (7th Cir.2006) (Posner, J.) ("Citrin violated [the CFAA because] his
> authorization to access the laptop terminated when, having already engaged in
> misconduct and decided to quit IAC in violation of his employment contract, he
> resolved to destroy files that incriminated himself and other files that were also
> the property of his employer, in violation of the duty of loyalty that agency law
> imposes on an employee."); *Shurgard Storage Centers, Inc. v. Safeguard Self
> Storage, Inc.,* 119 F.Supp.2d 1121, 1123, 1125-28 (W.D.Wash.2000) (concluding
> that employer stated claim under CFAA against employee who had "full access"
> to employer's computers but allegedly misappropriated trade secrets for benefit of
> competitor); *see also EF Cultural Travel BV v. Explorica, Inc.,* 274 F.3d 577,
> 583-84 (1st Cir.2001). **But others, including at least two district courts within
> [the 11th] Circuit, have opted for a less expansive view, holding that the
> phrase "without authorization" generally only reaches conduct by outsiders
> who do not have permission to access the plaintiff's computer in the first
> place.** *See, e.g., In re America Online, Inc.,* 168 F.Supp.2d 1359, 1370

(S.D.Fla.2001) (concluding that the phrase "without authorization" in the CFAA "contemplate[s] a situation where an outsider, or someone without authorization, accesses a computer"); *Lockheed Martin Corp. v. Speed,* No. 6:05-CV-1580-ORL-31, 2006 WL 2683058, at *5 (M.D.Fla. Aug. 1, 2006) (same); *Int'l Ass'n of Machinists & Aero. Workers v. Werner-Matsuda,* 390 F.Supp.2d 479, 498 (D.Md.2005) ("Thus, to the extent that Werner-Masuda may have breached the Registration Agreement by using the information obtained for purposes contrary to the policies established by the IAM Constitution, it does not follow, as a matter of law, that she was not authorized to access the information, or that she did so in excess of her authorization in violation of the SECA or the CFAA").

*Diamond Power International, Inc. v. Davidson*, 540 F.Supp.2d 1322, 1341-42 (N.D. GA 2007) (emphasis added).   The *Davidson* court opted to follow the other 11th Circuit District Court cases as the "more correct interpretation" and held that "a violation for accessing 'without authorization' occurs only where initial access is not permitted" and is aimed at the outsider accessing a computer. *Id*. at 42-43.   Similarly, "exceeding authorized access" occurs only where initial access is given but access to certain information is not. *Id*. at 43.   Under this view, the unauthorized use of the information is not a violation but only the unauthorized access. *Id*.

Applying this logic, Clarity cannot prove that Barney did not have authorization or that he exceeded his authorization.   As a Clarity employee, Barney had access to the servers, his Clarity email account, and all the information located on them.   When he gave his resignation notice, he did not intend for it to be immediate, nor was it ever explicitly stated when his employment ended.   Clarity did not remove Barney's access to these systems until October 3, 2008, after the conduct at issue occurred, despite possessing the ability to do so almost immediately as evidenced by the fact that it was done an hour after being requested by Ranney. There is no evidence that Barney was told not to access those systems or that he accessed those systems after October 3, 2008.

Similarly, there is no evidence that Barney did not have the authority to restore the laptop to factory setting prior to shipping it back to Clarity. Although he kept no information on the laptop and always kept his work on the server, Barney restored the laptop to protect any sensitive information that may have been on the computers. This is in line with Clarity's policy to "protect consumer data at all costs."

For this reason and the reasons listed above, Plaintiff cannot prove that Barney accessed a protected computer "without authorization" as required to prevail on its CFAA claim.

3.      *Clarity Cannot Show That Barney Obtained Any Information.*

Assuming *arguendo* that Barney did exceed his authority by engaging in the alleged behavior, Plaintiff fails to prove that Barney obtained any information from a protected computer as a result of the access. Clarity can point to no information that Barney has used on behalf of himself or CL Verify, and Clarity has no information that Barney copied, downloaded, or took any information from Clarity.

The most Clarity could prove is that Barney opened an email and erased information from his laptop. This does nothing to prove that he obtained that information. The evidence is simply not there.

4.      *Clarity Admitted Its Recoverable Damages Do Not Meet The Required $5000 Threshold*

The most compelling reason to grant summary judgment on Plaintiff's CFAA claim is that Plaintiff fails to meet the jurisdictional amount necessary to state a claim. Clarity alleged in its Complaint that it has suffered a loss of at least $5000, an allegation necessary to the maintenance of this action. However, discovery has shown that even if Plaintiff could meet all other elements for its claim, it cannot show a loss of at least $5000. Therefore, summary judgment for Count 1 in favor of Defendant is appropriate.

Clarity must show that it suffered damage or loss in order to maintain its action under the CFAA.   18 U.S.C. §1030(g).   "Damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information."  Section 1030(e)(8).  "Loss" is defined as

> any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

Section 1030(e)(11).  The statutory definitions are clear, and Clarity must have suffered damage or loss of at least $5,000 as those words are defined in the CFAA.

In *ResDev, LLC v. Lot Builders Association, Inc.*, 2005 WL 1924743 (M.D.Fla. 2005) – the only Middle District opinion on this issue – summary judgment was granted where one company alleged that another visited its website and accessed trade secret information and the only damage sought was the value of the trade secret information.  After a detailed look at the statutory construction of the CFAA, the court rejected any loss due to the value of the trade secret information and noted that "the CFAA plainly enumerates a narrow grouping of 'loss' distinct from – and thus excluding – the far greater range of losses that could flow from a violation of the CFAA."  *Id*. at 4.

In *Continental Group, Inc. v. KW Property Management*, LLC, 622 F.Supp.2d 1357 (S.D.Fla 2008), the court found that while there was clear evidence that more than $5000 was spent in attempts to investigate the integrity of computers following the unauthorized access, the investigation did not flow from an interruption of service was not a "loss" as defined by the CFAA.  The Court opined that its "conclusion is supported by the legislative intent in the CFAA, a criminal statute, to address interruption of service and damage to protected computers."  *Id*. at

1371.  Further, the cost of the analysis could not be "damage" under the CFAA because "based upon the plain language of the statute…the data must be impaired and not merely copied."  *Id*. Based on those findings, the court granted a motion to dismiss.

Similarly, in *Cohen v. Gulfstream Training Academy, Inc.*, 2008 WL 961472 (S.D.Fla 2008) the defendant in an employment discrimination case brought a counterclaim alleging violations of the CFAA, specifically that the plaintiff deleted files from a laptop and transferred business information to his personal computer to aid a competitor.  After first noting that the legal issue regarding the availability of certain types of damages should be decided at the summary judgment stage, the court went on to state that any loss must be related to the interruption of service and granted summary judgment for the plaintiff.

> In this case, the fact that Plaintiff copied files and allegedly stole clients from GTA did not cause an interruption of service as contemplated by the CFAA. Rather, the CFAA statutory language evidences an intent to allow recovery for reasonable costs caused by interruptions in service or damage to a computer. GTA would need to prove that the customer files were unavailable to GTA due to Plaintiff's actions in exceeding his authority to access the computer.  There is no evidence to support such a theory.  Simply copying files and then contacting customers in those files to take their business is not causing a loss because of interruption of service.

*Id*. at 4.

In *Cheney v. IPD Analytics, LLC*, (S.D.Fla 2009), a counterclaim was brought against a plaintiff who allegedly destroyed computer files on a company computer to conceal disloyal actions. On a motion to dismiss, the court found (1) the counterclaim failed to allege any facts that the company suffered "impairment to the integrity or availability of data" where files were destroyed but there was no allegation that the deleted data was not available through other means, and (2) any "loss" must be related to the interruption of service and costs incurred in conducting a damage assessment of the computer and attempts to restore the data cannot be

included.  *Id*. at 6-7.  The district court specifically ruled out any "loss" based on the fact that it was done in bad faith to conceal various breaches of fiduciary duty.  *Id*. at 7.

A brief look at other district court decisions reveals similar findings.  *See Andritz, Inc. v. Southern Maintenance Contractor, LLC*, 626 F.Supp.2d 1264 (M.D.Ga 2009) (finding no damage or loss for CFAA purposes where employees accessed a corporate computer network and stole trade secrets to provide to a competitor because there was no impairment to the network or data, the employer did not suffer any damage responding to or assessing the theft, and the employer did not lose revenue or incur costs because of an interruption of network service); *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands International, Inc.*, 616 F.Supp.2d 805, 810 (N.D.Ill. 2009) ("merely downloading and emailing confidential information is insufficient to show damages under the CFAA").  *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F.Supp.2d 468 (S.D.N.Y. 2004) (plaintiffs did not meet $5000 jurisdictional amount where computer was not inoperable and only loss of business was due to defendant's use of proprietary information).

The similarities between all of these cases and the violations alleged by Clarity are striking and make two things clear: (1) Clarity must prove that there was some loss or damage due to the impairment of the data or computer or resulting from an interruption of service and (2) it must prove that such loss is at least $5000 in value.  Clarity has failed to meet this burden.

As to its unauthorized email use claim, Clarity cannot show that there was any damage to the underlying data.   Assuming that Barney did access the email system and did copy information from it, there is no proof that any of that data was damaged or erased.  Clarity still has access to the underlying data.  While Clarity's allegation that Barney erased the hard drive before returning a laptop may allow for some theoretical damages, Clarity cannot show $5000 in aggregated loss.  The only losses that it can possibly claim – and even these claims are uncertain

– is the $900 it spent running diagnostics on the laptop and the cost of the Clarity employees reconfiguring the laptop which is $1890.80 at most.[7]  This falls far short of the required $5000. Any lost revenue or loss of trade secrets, which Clarity has not asserted, is not a result of an interruption of service or damage to a computer and cannot be recovered pursuant to the CFAA. Therefore, summary judgment must be entered for Barney on Count I.

**C.    Clarity Cannot Prevail on Count II – Breach of Employee Duty of Loyalty**

In Count II, Clarity claims that Barney breached an employee fiduciary duty of loyalty because while he was working for Clarity, he was also providing services to his prior employer, mainly helping to hire a replacement for him.  A claim of a breach of fiduciary duty has three elements: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach.  *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002).  Clarity cannot meet any of these three elements because Barney did not owe any fiduciary duty to Clarity; Clarity knew that Barney was still providing services to CL Verify; and Clarity did not suffer any damages.

*1.    Clarity Cannot Establish the Existence of a Fiduciary Duty of Loyalty*

Fiduciary duties can be express or implied.  *Capital Bank v. MVB, Inc.*, 644 So.2d 515, 518 (Fla. 3d DCA 1994).  In the case at bar, there is no employment contract that might give rise to a fiduciary duty. Where a fiduciary relationship is implied, it is premised on the specific factual situation surrounding the relationship of the parties.  *Id.*  The mere "fact that one party places its trust in the other does not create a confidential relationship in the absence of some

---

[7] Using Clarity's figures, the most the cost of labor could total is $1890.80.  This was determined with the following formula:

(8 hours x $64.90) + (12 hours x $54.30) + (12 hours x $60.00) = $1890.80

recognition, acceptance, or undertaking of the duties of a fiduciary on the part of the other party." *Barnett Bank of West Florida v. Hooper*, 498 So.2d 923 (Fla. 1986);

In the employment context, there are a few recognized fiduciary relationships. For example, corporate directors have a fiduciary duty to the corporation and its shareholders. *Renpak, Inc. v. Oppenheimer*, 104 So.2d 642, 644 (Fla. 2d DCA 1958). However, a "mere employee of a corporation ordinarily does not occupy a position of trust unless he also serves as its agent." *Id*; *see also Gregg v. U.S. Industries, Inc.*, 715 F.2d 1522 (11th Cir. 1983)(affirming a Middle District decision that under Florida law once an employee "was removed as president and chief operating officer of his former companies and made only a consultant he no longer had fiduciary duties" to the company); *In re N & D Properties, Inc.*,799 F.2d 726, 731 (11th Cir. 1986)("[A] fiduciary, under general corporate theory, includes an officer, director, agent, majority shareholder or a minority shareholder exercising actual control over the corporation.").

The Florida Supreme Court has recognized four situations in which a fiduciary relationship arises, noting that each requires an "unusually high degree of care." *Wachovia Ins. Services, Inc. v. Toomey*, 994 So.2d 980, 998 (Fla. 2008). The four situations giving rise to a fiduciary relationship are

> (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one person assumes control and responsibility over another, (3) when one person has a duty to act for or give advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer.

*Id*.

Barney was not a corporate officer of Clarity. Thus, to prove that he owed Clarity any fiduciary duties, Clarity must show that Barney falls into one of these situations. Clarity cannot

17

meet this burden.  Barney was simply an employee of Clarity, who worked primarily from his home office thousands of miles away from the rest of the employees.  There is no proof that Clarity placed trust in Barney that enabled him to gain superiority or influence over Clarity. There is no proof that Barney assumed control and responsibility over Clarity.  There is no proof that Barney had a duty to aid Clarity or give advice to Clarity on matters about its dealings with an entity it did not consider a competitor.  As an employee, Barney was not in a role that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer.

Clarity's claim of breach of duty of loyalty fails because Clarity cannot establish the existence of any duty by Barney, a regular employee.

2.     _Clarity Cannot Show Barney Breached A Fiduciary Duty_

Even if Clarity were able to show that a fiduciary duty existed, it cannot show that any breach occurred.  Clarity asserts Barney breached his duty of loyalty by working for DP Bureau or CL Verify while employed by Clarity, by working or engaging in activities that benefitted DP Bureau, CL Verify, or himself, and by using his position to obtain confidential business information.  [Complaint ¶31].

However, both Ranney and Clarity have admitted that Clarity was not a competitor of DP Bureau or CL Verify at the time of Barney's employment.  An employee cannot breach any duty of loyalty by working for another non-competing company.  Barney's work with CL Verify did not prevent him from doing any of his Clarity work and Clarity is unable to prove otherwise. Merely holding two jobs cannot be a breach of a duty of loyalty to an employer.

Moreover, Ranney and Clarity knew about Barney's continued relationship with CL Verify.  Ranney has admitted that Barney disclosed the relationship to CL Verify at the

18

beginning of his employment with Clarity and again while he was employed by Clarity. Therefore, any behavior that Clarity might allege was a breach of Barney's duty of loyalty was known to Clarity all along.

Clarity's final assertion of a breach of a duty of loyalty – that Barney used his position to obtain confidential business information – is without evidentiary support.  Clarity cannot point to any information that Barney took or retained, nor can it point to any information that has been shared with CL Verify.  This is also fatal to its claim.

3.    *Clarity Cannot Show Any Damages*

Assuming *arguendo* that Clarity could prove that Barney owed Clarity a fiduciary duty and that he breached this duty, Clarity cannot show that any damage occurred as a proximate result.  Thus, it cannot prove all elements necessary to a claim for breach of fiduciary duty.

Clarity alleges that working for both CL Verify and Clarity at the same time is a breach of the duty of loyalty and is seeking the return of compensation paid to Barney during his employment with Clarity as damages.  Clarity has failed to show that it was harmed by Barney's dual employment or that Barney ever failed to complete his tasks for Clarity.  Clarity had admitted that that it was not a competitor of CL Verify and that it cannot identify any task that Barney did not perform for Clarity.  Further, at CL Verify, Barney was performing primarily analytics.  At Clarity, there was no analytics work to be done so he was assigned other tasks.

Barney has been unable to locate any Florida case law supporting a claim for breach of a fiduciary duty against an employee who held two separate roles in two non-competing companies where all work is completed as requested.

Clarity also claims that Barney breached his duty of loyalty by using his position to obtain confidential information.  However, Clarity never alleged that it suffered any damage as a

result nor can it prove that it has been harmed in any way.  The Complaint is devoid of any allegation that any damage occurred as a result of this breach.  Regardless of the pleadings, Clarity cannot prove that any damage did occur.  It has no proof that Barney has this confidential information or that it was used to Clarity's detriment.  Further, Clarity has stated that it had no business at the time of Barney's resignation.  Therefore, it is unclear how its business could be harmed.  Further, Barney has also been unable to locate any Florida case law that allows for the recovery of a salary paid to any employee where the employee held two separate roles in two non-competing companies, where all work was completed.[8]

Under Florida law, claims for breach of a fiduciary duty require resulting damages as one of the elements Plaintiff must prove.  Plaintiff has not alleged damage for this claim nor can it prove any.  Therefore, summary judgment for Count II is required.

**D.      Clarity Cannot Prevail on Count III – Conversion Because It Cannot Show That It Was Deprived Of Any Property.**

Conversion is "an unauthorized act which deprives another of his property permanently or for an indefinite time".  *Goodrich v. Malowney*, 157 So.2d 829, 831 (Fla. 1963).  The essential element of conversion is not the wrongful acquisition of the property but the wrongful deprivation of property to the owner.  *Id*. at 831 ("The necessary element of conversion is wrongful deprivation of the owner of his property."); *Star Fruit Co. v. Eagle Lake Growers*, 33 So.2d 858, 860 (Fla. 1948) ("The gist of the conversion has been declared to be not the acquisition of the property of the wrongdoer, but the wrongful deprivation of a person of

---

[8] In fact, there is a strong argument that federal law would prohibit the type of salary recovery sought by Clarity.  The Fair Labor Standards Act (FLSA) defines a salary as payment "not subject to rendition because of variations in the quality or quantity of the work performed."  29 C.F.R. 541.602.  Clarity agreed to pay Barney a salary.  Barney performed his duties and collected his salary.  Even if he spent other parts of his days "moonlighting," he is still entitled to his full salary.  Failure to pay Barney his full salary would represent a violation of the FLSA.

property to the possession of which he is entitled") (internal citations omitted); *West Yellow Pine Co. v. Stephens*, 86 So. 241, 243 (Fla. 1920) ("We think that the authorities are agreed that the essential elements of a conversion is a wrongful deprivation of property to the owner"); *Charter Air Center, Inc. v. Miller*, 348 So.2d 614, 616 (Fla. 2d DCA 1977) ("The essential element of conversion is wrongful deprivation of property to a person entitled to possession").

Clarity cannot prove that it has been deprived of any property.  Clarity has admitted that it can still access the information in the email account that Barney used.  Further, Clarity has no evidence that Barney copied, downloaded, or took any of the information from that email account.  The most it can prove is that an email had been marked as "read" and that is simply not enough to prove conversion.

Additionally, Clarity cannot show that Barney retained any information from his laptop. Barney has testified that he saved all of his work to the Clarity servers – the servers Clarity still has access to – and Clarity has no knowledge of any information that was on the laptop prior to being restored to factory setting.   Clarity cannot prove that it has been deprived of any information.

Ranney further admits that although Clarity would have continued to have access to the data in the attachment to the email from Petri at Certegy, he instructed Clarity not to use the data because the underlying data did not belong to Clarity.

Simply put, Clarity cannot prove that it has been deprived of anything.  This deprivation is not only a necessary element to a conversion claim, but it is the ***essential*** element.  Thus, the Defendant is entitled to summary judgment for Count III.

### E.     Clarity Cannot Prevail on Count IV – Fraudulent Misrepresentation

The elements of fraudulent misrepresentation are "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Johnson v. Davis*, 480 So.2d 625, 627 (Fla. 1985).

In this case, the claim for fraudulent misrepresentation fails because there was no false statement.  Ranney admitted that when Barney was hired by Clarity, he informed Ranney that he was going to continue to provide services to CL Verify.  Ranney also admitted that he was aware during Barney's employment with Clarity that he continued to provide services to CL Verify. Since there was no false statement, Clarity cannot show that Barney knew the statement to be false.  Further, the lack of a false statement prevents Clarity from showing that there was an intention to induce another to act on it.   Even assuming *arguendo* Barney's statements to be false, Ranney admits that he knew Barney was performing work for CL Verify and continued to employ him.  Thus, there can be no reliance.  *See M/I Schottenstein Homes, Inc. v. Azam*, 813 So.2d 91, 94-95 (Fla. 2002) ("For if the recipient 'knows that it [the statement] is false or its falsity is obvious to him,' his reliance is improper, and there can be no cause of action for fraudulent misrepresentation.")(quoting *Bessett v. Bessett*, 389 So.2d 995, 997 (Fla. 1980)).

Finally, Clarity has not pointed to any injury caused by reliance on the allegedly false statement.  Fraud that does not result in damage is not actionable – there must be actual damage for recovery in a fraudulent misrepresentation action.  *Casey v. Welch*, 50 So.2d 124, 125 (Fla. 1951)(affirming jury verdict in favor of defendant where "the plaintiff was unable to prove any damage, and the record is devoid of evidence that plaintiff was injured by the defendant's misrepresentations"); *National Aircraft Services Inc. v. Aeroserv International, Inc.*, 544 So.2d

1063, 1065 (Fla. 3d DCA 1989)(reversing jury award of nominal and punitive damages in part because "[a]s indicated by the fact that only nominal, rather than compensatory damages were awarded, [the plaintiff] did not show that he had sustained injury as a result of the alleged fraud" and "failed to demonstrate an indispensable element of the tort"); *National Equipment Rental, Ltd. v. Little Italy Restaurant & Delicatessen, Inc.*, 362 So.2d 338, 339 (Fla. 4th DCA 1978)(reversing jury verdict in favor of fraud because the wronged party could not produce any facts or evidence that they had sustained damages as required to establish a claim of fraudulent misrepresentation).

Clarity can point to no work that Barney failed to perform as a result of his duties with CL Verify.  Additionally, Clarity can point to no information that Barney gained during his employment that he has used to Clarity's detriment.  Clarity is seeking the return of Barney's salary, but, as noted above, Barney did the work and is entitled to that salary.  Clarity has simply not shown how it was injured by hiring Barney.

Summary judgment for Count IV should be granted because Clarity cannot meet its burden of proving that there was a false statement, that it relied upon any false statement or that it was injured in any way.

### III

### <u>CONCLUSION</u>

Plaintiff bears the burden to prove each and every element of its claims.  As detailed above, Clarity cannot meet this burden.  Therefore, Defendant is entitled to summary judgment on all counts.

Respectfully submitted,

/s/ Ryan D. Barack
Ryan D. Barack
Florida Bar No. 0148430
rbarack@ksblaw.com
Kwall, Showers & Barack, P.A.
133 North Fort Harrison Avenue
Clearwater, Florida 33755
(727) 441-4947
(727) 447-3158 Fax
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing has been furnished via the CM/ECF

system this 2nd day of November 2009 to:

Cody Fowler David
cfd@davis-harmon.com
Christopher T. Abrunzo
ca@davis-harmon.com
Davis & Harmon, P.A.
110 North 11th Street, 2nd Floor
Tampa, FL 33602
813-222-3600
813-222-3616 FAX

/s/ Ryan D. Barack
**Attorney**