UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLARITY SERVICES, INC.,

    Plaintiff,

v.                                                              CASE NO.:  8:08-CV-02278-T-23TBM

DEAN BARNEY,

    Defendant.
_____/

## PLAINTIFF'S TRIAL BRIEF

The Plaintiff Clarity Services, Inc., through undersigned counsel and pursuant to the Court's Case Management and Scheduling Order 6(a), files its Trial Brief.

Plaintiff contends that there are no disputed issues of law.  In light of issues raised in Defendant's Motion for Summary Judgment and Defendant's Trial Brief, Plaintiff asserts the following with respect to each of the four Counts plead:

**Count I – Violation of Computer Fraud and Abuse Act**

A civil action for violation of the Computer Fraud and Abuse Act ("CFAA") may be brought under 18 U.S.C. § 1030(g) when a person (1) "intentionally accesses a computer without authorization or exceeding authorized access and thereby obtains" (2) "information from any protected computer," 18 U.S.C. § (a)(2)(C) and (3) causing "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I).  Barney admits for purposes of summary judgment that Clarity's information was from "any protected computer."

*Barney Exceeded Authorized Access to Clarity Computer*

Barney's Motion for Summary Judgment and accompanying Memorandum of Law fails to inform the Court that under the CFAA the term "'exceeds authorized access' means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6).

According to Ranney, Barney quit his employment with Clarity on Tuesday, September 30, 2008 (Ranney Dep. at 49-50). Although Barney "deems" his last day at Clarity was Saturday, October 4, 2008, he acknowledged that he was paid only through September 30, 2008 (Barney Dep. at 156-157). Further, the evidence shows that on October 2, 2008, Barney emailed Ranney regarding the computer equipment and needing "data from Certegy and Id Analytics" and trading "equipment for final review of Certegy and Id Analytics" (Ranney Dep. at Exhibit 5). Moreover, Barney received an email from Certegy's senior director of research and development on October 3, 2008, questioning why Barney would "need additional results from Certegy if [he] was no longer with Clarity Services," and warning that Certegy was reserving its right "to do a full Audit to make sure that none of the results that we send to you remain or were copied to any of the equipment (laptop, PC, external storage device), which doesn't belong to Clarity Services" (Ranney Dep. at Exhibit 8; Ranney Aff. at Exhibit 5).

In his Memorandum of Law in support of his Motion for Summary Judgment, Barney erroneously relies upon the construction of "without authorization," not the construction of "exceeds authorized access." Recently, in <u>Vurv Technology LLC v. Kenexa Corp.</u>, No. 1:08-cv-3442-WSD, 2009 WL 2171042 (N.D. Ga. July 20, 2009), the court ruled that a claim for damages under the CFAA for "exceed[ing] authorized access" was sufficient to withstand a motion to dismiss where the plaintiff alleged that:

> *After* Clements's last day of employment with Vurv, before returning the Vurv computer that she had been issued, and, upon information and belief, after she had begun her employment with Kenexa, Clements continued to access and copy large groups of documents, folders, and .zip files in short increments of time. When Clements returned Vurv's computer, she did not return any external hard drive or any other backup media.

Vurv, slip op. at *7-8. Additionally, in Continental Group, Inc. v. KW Property Management, LLC, 622 F. Supp. 1357 (S.D. Fla. 2009), the Southern District, in granting the plaintiff's motion for preliminary injunction under the CFAA, stated with respect to "exceeding authorized authority" that:

> Plaintiff relies upon *International Airport Centers, LLC v. Citrin,* 440 F.3d 418, 420-21 (7th Cir.2006) and *Hewlett-Packard Co. v. Byd:Sign, Inc.,* 2007 WL 275476 (E.D.Tex. Jan. 25, 2007). These cases stand for the proposition that once an employee is working for himself or another, his authority to access the computer ends, even if he or she is still employed at the present employer.
>
>   \* \* \*
>
> This Court concludes that Plaintiff has shown a substantial likelihood of success that Defendant Kravit did exceed her authorization in downloading various files identified in ¶¶ 17-27 above. Though the district court decisions on this issue are in dispute, an employer such as TCG clearly has a right to control and define authorization to access its own computer systems. In this case, the cases cited by Defendants can be distinguished because Plaintiff has shown that Kravit downloaded files that she did not need for her remaining business purposes for TCG during a time when she was actively negotiating to leave TCG and be employed by KW (and, during a time when KW's principals clearly believed Kravit was coming to work for them).

622 F. Supp. at 1372.

Here, a reasonable jury could conclude from the facts that Barney accessed and "scrubbed" Clarity data after he had terminated his employment with Clarity, and thus, exceeded his authorized access under the CFAA.

*Barney Obtained Information from Clarity's Computer*

3

Barney admits that he accessed information and emails on the Clarity computer and server between September 30, and October 3, 2008. The email from Jakub Petri of Certegy evidences that Barney accessed information on Clarity's server and email on October 3, 2008. Accordingly, there is evidence that Barney obtained information from a protected computer in violation of 18 U.S.C. § 1030(2)(2)(C) and altered, i.e., erased the information.

*Clarity's Damages Under the CFAA Exceed $5,000*

In moving for summary judgment, Barney relies upon the testimony of Brian Ketelsen to allegedly establish that Clarity's "loss" does not meet the $5,000 damages threshold under 18 U.S.C. § 1030(c)(4)(A)(i)(I). Barney's improper access and erasure of the computer caused Clarity concern and dictated that the company expend time and resources to determine the extent of damages as a result of Barney's actions and required efforts to try to correct those damages. (Ranney Aff. at ¶¶16-19). The damages were described in Plaintiff's Amended Rule 26 Disclosure as follows: (1) Damages flowing from information lost or destroyed from erasing Clarity Services Inc.'s computer; (2) Damages flowing from Mr. Barney improperly using or sharing confidential and proprietary business information owned by Clarity Services Inc.; (3) Costs incurred to determine/recover computer information erased by Mr. Barney; and (4) Damages flowing from using or sharing information or data obtained from Certegy. Interestingly, Barney never asked Ranney at his deposition how much time he spent on "responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information it its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). In his affidavit filed in opposition to Barney's Motion for Summary Judgment, Ranney has averred that the value of his time in responding to Barney's violation of the CFAA

4

and conducting a damage assessment exceeded $4,000. (Ranney Aff. at ¶ 19). When this amount is added to the amount testified to by Brian Ketelsen, Clarity's damages exceed $5,000. Accordingly, there is evidence from which a jury could conclude that Clarity has met the CFAA jurisdictional threshold amount.

**Count II – Breach of Employee Duty of Loyalty**

In <u>Charles Schwab & Co., Inc. v. McMurry</u>, 2008 WL 5381922, at *1 (M.D. Fla. Dec. 23, 2008), the Court ruled, contrary to Barney's claim that he owed no duty of loyalty or fiduciary duty to Clarity, that

> It is well-established under Florida law that an employee owes a fiduciary duty and a duty of loyalty to his or her employer. *Life Marketing of Florida, Inc. v. A.I.G. Life Ins. Co.,* 588 So.2d 663, 665 (Fla. 5th DCA 1991) (citing *Connelly v. Special Road & Bridge Dist.,* 99 Fla. 456, 126 So. 794 (Fla.1930)).

<u>See also</u> <u>Brigham v. Brigham</u>, 11 So.3d 374 (Fla. 3d DCA 2009) ("An employee owes a duty to her employer to exercise diligence and good faith in matters relating to the employment.") *Haynes v. The Singer Co.,* 1981 WL 2344 (N.D. Fla. June 19, 1981); *Kilgore Ace Hardware, Inc. v. Newsome,* 352 So.2d 918, 919 (Fla. 2d DCA 1977).

*Barney Breached His Fiduciary Duty to Clarity*

Although Barney claims that Ranney and Clarity knew he continued his employment with CL Verify, the record shows that Barney just told Ranney that he (Barney) was only assisting CL Verify in finding his replacement. Ranney did not know that Barney was actively meeting with CL Verify clients. Ranney certainly did not know that Barney would participate in a CL Verify sales meeting more than 4 months into his employment with Clarity as part of his "transitional work" for CL Verify. According to the terms of his employment, Clarity paid Barney $200,000 annually, in twelve equal installments (Barney Dep. at 48, 51). Further, the record shows that Barney continued to make his annual salary (between $160,000 and $190,000)

5

from CL Verify the entire time he was employed by Clarity (Barney Dep. at 48, 54). While working for two masters, Barney attended sales meetings to ask questions about "specific clients they [CL Verify] wanted to continue to work with." (Barney Dep. at 146; Anderson Dep. at 83).

Grady Reynolds, who was vague in his deposition about his involvement with CL Verify during the times relevant to Clarity's causes of action, admitted that DP Bureau owned 80% of CL Verify and the Grady Reynolds Trust owned 50% of DP Bureau (Reynolds Dep. at 20). Reynolds claimed that he did not know that Barney was working for Clarity at the same time he was working for CL Verify (Reynolds Dep. at 73, 76). Nevertheless, he testified that he "got the impression" that Barney "would help" CL Verify "get back up on our feet" after Ranney quit. (Reynolds Dep. at 102). According to Reynolds, "it was probably helpful to know that – that Clarity was making plans to compete with us, or that I believe that they were" (Reynolds Dep. at 102). Reynolds further testified that the information Barney gave him "solidified some of the things that I already knew: That that snake Tim Ranney was taking our employees and starting a competing business. It was very helpful" (Reynolds Dep. at 103).

Beginning in May 2008, Kim Anderson was acting CEO for CL Verify (Anderson Dep. at 51). He became CL Verify's CEO in October 2008 (Anderson Dep. at 18).

In May 2008 (the month following Barney's resignation from CL Verify and the same month during which Barney accepted employment with Clarity), Anderson talked with Barney about "company issues associated with the clients [sic] use of our products, other work that [we] might have been doing for the company" (Anderson Dep. at 40). He also talked with Barney in May 2008 about "[b]usiness matters associated with – with clients that he was doing analytic work for," "[v]arious issues on data tests with our information, a variety of things associated with what the head of analytics for a company would be doing" (Anderson Dep. at 41).

6

Anderson also testified that Barney was "actively engaged with various clients in helping them to understand how to use our products and services" (Anderson Dep. at 57). In fact Barney never stopped working as an employee of CL Verify. (Anderson Dep. at 67). During much of the period of overlap employment, Barney submitted time sheets to Clarity representing that he was working 8 hours per day for Clarity.

Contrary to the representations Barney made to Ranney at the time that he was hired and throughout his employment with Clarity, Barney's own testimony indicates that there was never an end date for his employment with CL Verify and that he continued to perform tasks for CL Verify during his employment with Clarity. (Barney Dep. at 45, 57-58). Barney's own testimony indicates that the CL Verify payroll never stopped during his the entire period of his employment with Clarity. (Barney Dep. at 56).

A jury could conclude from these facts that Barney breached his duty of loyalty to Clarity by continuing his employment with CL Verify, and by keeping Reynolds apprised that "that snake (Ranney) was "making plans to compete with [CL Verify]."

*Clarity Has Suffered Damages by Barney's Breach of Employee Duty of Loyalty*

First, Barney has provided this Court no controlling or persuasive Florida law that Clarity cannot be awarded damages of the salary and benefits it paid to Barney as damages for his breach of fiduciary duty. At least one Florida appellate court has held that employees could recover their unpaid salaries under a breach of contract theory. See Williams v. Peak Resorts Intern. Inc., 676 So.2d 513 (Fla. 5th DCA 1996). As a corollary, then, it appears that Florida courts could and would hold that Clarity is entitled to the salary it paid to Barney from the time he breached his fiduciary duty until he resigned on September 30, 2008. See also Holiday Properties Acquisition Corp. v. Lowrie, 2003 WL 1040162 (Ohio Ct. App. Mar. 12, 2003)

7

(holding that award of salary paid to general manager who breached fiduciary duty of loyalty to employer by starting his own business and competing with employer was supported by evidence).

Second, Barney does not offer the Court any legal support for his suggestion that awarding Clarity damages for the salary it paid to Barney would represent a violation of 29 C.F.R. § 541.602, or the Fair Labor Standards Act. In fact, a California appellate court has held squarely to the contrary:

> Nothing in its language or the legal context in which it has been applied suggests that the federal salary basis regulation (or its state law equivalent) in any way controls the employer's legal right to recover salary and benefits previously paid to a faithless employee as damages or as restitution in a civil lawsuit for breach of fiduciary duty.

Service Employees Intern. Union, Local 250 v. Colcord, 72 Cal. Rptr. 3d 763 (Cal. Ct. App. 2008).

Third, and finally, under well-established Florida law, Clarity may be entitled to nominal damages for breach of fiduciary duty, even if Clarity did not suffer, or cannot prove, actual damages. See Rocco v. Glenn, Rasmussen, Fogarty & Hooker, P.A., --- So.3d ----, 2009 WL 3320202 at *4 n.1 (Fla. 2d DCA Oct. 16, 2009); Stevens v. Cricket Club Condominium, Inc., 784 So.2d 517, 519 (Fla. 3d DCA 2001); Continuum Condo. Ass'n v. Continuum VI, Inc., 549 So.2d 1125, 1127 (Fla. 3d DCA 1989).

**Count III – Conversion**

Conversion is an "act of dominion wrongfully asserted over another's property inconsistent with his ownership therein." 12 Fla.Jur.2d *Conversion and Replevin* § 1 (1979). Conversion is an appropriate cause of action even if the specific property "converted" has no actual value. *See Tourismart of America, Inc. v. Gonzales,* 498 So.2d 469, 470 n. 2 (Fla. 3d DCA 1986) (holding that airline tickets, which have almost no value as property considering they are mere pieces of paper, are capable of being converted because it is not the tickets, but the service the tickets represent which is "converted").

8

Warshall v. Price, 629 So.2d 903, 904 (Fla. 4th DCA 1993).

Barney admits that he accessed information and emails on the Clarity computer and server between September 30, and October 3, 2008. The email from Jakub Petri of Certegy evidences that Barney accessed information on Clarity's server and email on October 3, 2008. Accordingly, there is evidence from which a jury could find that after he resigned, Barney wrongfully asserted control over Clarity information that was inconsistent Clarity's ownership.

Additionally, as with Clarity's breach of employee loyalty claim, Florida case law holds that nominal damages are properly awarded in a cause of action for conversion. See R & B Holding Co., Inc. v. Christopher Advertising Group, Inc., 994 So.2d 329 (Fla. 3d DCA 2008); Gamma Development Corp. v. Steinberg, 621 So.2d 718 (Fla. 4th DCA 1993).

Because there are genuine issues of material fact for a jury to resolve on Clarity's Conversion claim, Barney's Motion for Summary Judgment on Count III should be denied.

**Count IV – Fraudulent Misrepresentation**

The elements of a claim for fraudulent representation are: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and, (4) consequent injury by the party acting in reliance on the representation." Johnson v. Davis, 480 So. 2d 625, 627 (Fla. 1985).

*False Statement of Material Fact*

Barney represented to Ranney that he had resigned from CL Verify, and was only continuing his association there to assist them in finding his replacement (Ranney Dep. at 42-49; Barney Dep. at 46, 51, 56, 57). Ranney did not know, however, that Barney had attended a

9

meeting with CL Verify in Kennesaw, Georgia, and was engaging in activities unrelated to any replacement hiring or transition work (Ranney Aff. at ¶ 12).

*Barney Knew His Representation Was False*

Barney did not tell Ranney that he was servicing CL Verify's clients and attending meetings for the benefit of CL Verify. Barney continued to receive and accept his full salary from CL Verify during the entire period that he was employed with Clarity. Barney was still providing services to CL Verify in September, 2008, more than 4 months after accepting the position with Clarity (May 15, 2008), and more than 5 months after he claimed to have resigned from CL Verify (April 15, 2008). Even Barney knew what he did was wrong and felt the need to "come clean" to his other employer about what he had perpetrated for the previous 4 months. (Barney Dep. at 175). Barney testified to the following: "I came clean." "Because I never told them the entire time. I wanted to disclose everything that I had done for the previous 4 months." (Barney Dep. at 175).

*Barney Intended to Induce Ranney to Rely on His Misrepresentation*

Evidence that Barney intended to induce Ranney to rely on his misrepresentation includes: (1) Barney's failure to tell Ranney the extent of his significant involvement with CL Verify, as detailed by Kim Anderson, Grady Reynolds and Mr. Barney himself; and (2) Barney's failure to tell Ranney that while allegedly assisting CL Verify in finding his replacement that he was still the Director of Analytics there.

*Clarity Was Injured by Barney's Fraudulent Misrepresentation*

Clarity paid Barney salary and benefits in excess of $75,000 from May 15, 2008 (Barney's date of hire) to September 30, 2008 (the day Ranney confronted Barney about his disloyalty and misrepresentations, and Barney resigned). Ranney would not have hired Barney

to work for Clarity if he had known that Barney's representation regarding his resignation was false, and would not have hired Barney had he known that Barney was doing anything other than cooperating in hiring his replacement for CL Verify. (Ranney Aff. at ¶ 21).  Ranney would not have continued to employ Barney if he had known the extent to which Barney was providing analytics services to CL Verify (Ranney Aff. at ¶¶ 21-25).  As explained above with respect to the damages for Barney's breach of employee duty of loyalty, these are appropriate damages in Florida.  See also Johnson v. Davis, 480 So. 2d at (fraudulent misrepresentation buyer established damages of $26, 000 based upon their tender of that amount to defendant following seller's intentional misrepresentation that there were no problems with roof on house).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 26, 2010, I electronically filed the foregoing with the Clerk of the Court, Middle District of Florida, by using the CM/ECF system which will send a notice of electronic filing to the following:  Ryan D. Barack, Esquire, Kwall, Showers & Barack, P.A., e-mail: rbarack@ksblaw.com.

                                                s/ Cody Fowler Davis
_____
CODY FOWLER DAVIS
Florida Bar No.  437700
CHRISTOPHER T. ABRUNZO
Florida Bar No.  0014909
Attorneys for Plaintiff, Clarity Services, Inc.
Davis & Harmon, P.A.
110 North 11th Street, Second Floor
Tampa, Florida  33602
(813)  222-3600 – Telephone
(813)  222-3616 – Facsimile
E-Mail:  cfd@davis-harmon.com
E-Mail:  ca@davis-harmon.com